Good morning. We're honored this morning to have Judge William Young of the United States District Court for the District of Massachusetts sitting with us by designation of the Chief Justice, and we appreciate his willingness to help us out. Thank you. Honored to be here. Our first case this morning is 075121 Amerisource Corporation v. United States. Mr. Mayor. Thank you, Judge Mayer. May it please the Court. The issue in this case is that the takings clause of the Fifth Amendment requires compensation when the government takes property as evidence from the party that is not involved in the prosecution when the property has not been used for any unlawful or prescribed use. In our view, the answer is that the takings clause does require compensation. I'd like to talk about three points today, if I might. I think the first point to talk about is the relationship between the compensation requirement of the takings clause and the police power. The second thing I'd like to talk about is the nature of the invasion of property at issue here. The third point I'd like to talk about is the propriety of one person as opposed to the public being, bearing the costs of prosecutorial activity. The first point is the one where there's the starkest difference between the position of the government and the position of the plaintiff in the court below. The government's position is that the compensation requirement is wholly inapplicable to any activity under the police power and that compensation is owed only when property is taken by amendment of domain. That's a very odd position because it's directly contrary to the way that the United States Supreme Court analyzes the relation between these powers. It is contrary to the analysis of the court's recent decision in Acadia, which I think is the closest recent decision in this court. What those courts have recognized is that there are certain types of activities under the police power for which compensation is owed and other types of activities for which compensation is not owed. If you get past that point, that brings us to the second part of our analysis, which I think is the place where the takings clause is very difficult, and that's deciding how do you draw the line between regulatory activity for which compensation is required and regular activity for which compensation is not required. The decisions of the Supreme Court and of this court have articulated several different ways to look at that problem, but we think that under any of those tests or touchstones that the court has articulated, compensation is owed here. Let me ask you, you mentioned the Acadia case, and how do you get around that decision? And basically, I'm just going to read the pertinent part at 458 Fed 3rd, 1332, because it says it better than I could paraphrase it. It says, the government's seizure, retention, and damaging of the property did not give rise to an actionable claim for taking the court reason because, and it's now down below, items properly seized by the government under the police power not seized for public purposes or public use within the meaning of the Fifth Amendment. And isn't that really what we have here? I don't think so, and Judge Bryson is a great writer, and he certainly says it better than I could. I think that the central part of the opinion for our purposes is in 458 F. 3rd at 1332, where the panel explains, it is insufficient to avoid the burdens imposed by the taking clause simply to invoke the police power, regardless of the respective benefits to the public and burdens on the property owner. And then they explain why the relationship between the power that's used there and the intrusion of property there is such that compensation is not due. So then he explains, the prohibition on importing goods bearing counterfeit marks that misrepresent their quality and safety is the kind of exercise of the police power that has repeatedly been treated as legitimate, even in the absence of compensation to the owners of the imported property. And so, for example, in this case, if the government had come to our client's warehouse and had confiscated the goods because they were adulterated or misbranded, I think this would be a very different case, because the government surely has the power to confiscate and destroy adulterated pharmaceuticals. Well, you distinguish Acadia, then, on its facts. But doesn't the case stand for the proposition that if the character of the government's action is an exercise of the police power, then the takings clause is not implicated? Oh, I think not at all. I think what Judge Bryson does in the sentence I quote is he says, it is insufficient to avoid the burdens imposed by the taking clause simply to invoke the police powers of the state, regardless of the respective benefits to the public and burdens on the property owner. It's not enough to say it's a police power. You have to examine the benefits to the public and burdens to the property owner. And I think that's where you come to the series of cases that have investigated what types of regulatory activity imposes a cost. It's justly borne by the public. And what type of those is a cost that's justly borne by the property owner. So you think it's a balancing test here, looking at the facts of the specific case? I wouldn't characterize it as a balancing test. I think that the court has articulated several different ways to assess when government activity is the type of activity which compensations do. But I don't think it's really a balance. I think it's more of a set of categorical tests that are difficult to apply. So one common statement by the court is that it's much more likely that compensation would be due if there's a physical deprivation of property as opposed to merely a regulation that prevents some use. Are you suggesting, Mr. Mann, that there's a distinction between a situation on the one hand where property is seized because it itself is part of the crime, like the yacht in the Puerto Rico case, and the car in Venice, as opposed to here where the property was simply evidence? Yes. Are you drawing that? Is that the distinction you're seeking to draw? I think there's a great distinction between those two cases because the power on which the government relies for confiscating the property is very different than the power that's at issue here. If the basis for which the property is taken is some unlawful or prescribed use of the property, either because the property itself is unlawful, as indicated where it's counterfeit goods, or because the property, though lawful, like money, is used to commit a criminal offense, I think that's a very different case. And that's a case in which the use of the property in an unlawful way justifies a specific action against the property rights in that property. Well, don't you have here, though, in a sense the use of lawful property in an unlawful way because pharmaceuticals provided in good faith by your client to the facility in West Virginia were to be used improperly in the sense that that corporation or entity or whatever it was was not a lawful distributor of pharmaceuticals? Well, we don't know that the property here was used in an improper way. The government did not forfeit the property here. All we know is that this property was to be used as evidence. In fact, it wasn't used as evidence, but I think the better analogy, which is one that was used in the trial court, would be to a carjacking. So suppose I'm driving a car that I've rented from Hertz, and I'm carjacked. There's nothing really illegal about the car. It's been used in an illegal way, but it is evidence of a crime. And so the government might take the car and just keep the car forever for an eventual trial they might wish to have against the carjacker if they can ever locate the carjacker. And of course, sometimes they're difficult to find. So they might need to keep it for several years, and then the car would eventually become totally worthless. I think that's more like this case, where the sole justification is used as evidence, not an allegation, for example, that the drugs were adulterated or misbranded, because that would have justified confiscation of the products under the Food-Driven Cosmetic Act. But there's been no suggestion of that. These goods were in sealed packages. There's nothing in the record that would suggest that there was anything unlawful in the uses to which these pharmaceuticals were put before the government confiscated them. All we know is that there's a possibility that they could have been useful as evidence in a trial to convict the people who were principals of the company to which we sold them. Well, we don't just rest on the government's assertion there. I mean, there were proceedings under the rules of criminal procedure 41G. And the magistrate judge determined that the government should keep the materials. I won't call them evidence. Isn't that the appropriate protection of a citizen against the abuse of the police power, the existence of that rule and proceedings thereunder? I think the distinction between Rule 41 and the Tucker Act is really the most important analytical thing about our position here. In our view, Rule 41 is a rule that's supposed to police the government's need for evidence at trial. And if the government takes property and they want to use it for evidence at a trial, the trial judge in that case is going to assess whether or not they need to keep it. And in our view, if the government needed this evidence for the trial and had a legitimate need to use this evidence for the trial, the trial judge should not release it simply because it was going to destroy all value of the property. The trial judge in the criminal case is supposed to be working on the prosecution and ensuring that the prosecution proceeds in a fair way. If it happens that there's a taking, that's something that that court can't respond to. I think that's what the Court of Federal Claims sits as to under the Tucker Act, provide compensation when property is taken. So we think there's two very different inquiries. We don't think it's appropriate for the Court of Federal Claims to try and figure out whether the government's criminal division is running a reasonable prosecution. That's not their place. I think their place is to decide if the intrusion of property is enough that it was a taking. Similarly, we think that the judge in the criminal case should not interfere with the exercise of prosecutorial discretion because there might end up being a taking later. We think that there's two separate inquiries. That judge is supposed to make sure that the criminal process is done fairly, and the Court of Federal Claims is supposed to ensure that citizens who are harmed by general public powers are compensated. I'd like to reserve the rest of my time for that. All right. Mr. Chandler. May it please the Court. The seizure of Amerisource's property in this case represented a valid exercise of the government's police power and therefore was not a taking pursuant to the Fifth Amendment. Now, Amerisource doesn't argue that the seizure of the property in this case was not a valid exercise of the government's police power, nor does it contest the notion that, generally speaking, when the government exercises its police power, there's no taking. Instead, Amerisource argues that its status as an alleged innocent owner by itself gives rise to a takings claim under these circumstances. That argument is contrary to the decisions of the Supreme Court, this Court, and several other courts, and we therefore respectfully request that this Court affirm the judgment of the Court of Federal Claims. What are the limits on this power, this police power? They may not be presented in this case, but is this a power without limit? I'd just like you to help me out on what the limits are. Well, I think that that's not an issue in this case. Really, what we're talking about is whether this particular exercise of the government's power was a valid exercise of the police power. I think that certainly there—I think this represents an example of—really at the bullseye of consideration of the police power. In other words, there certainly is a scope of the government's action, and I think this is squarely in the center of the scope of what would constitute police power. I think there are three problems, really, with Amerisource's innocent owner claim. The first is that it completely ignores the fact, as the Supreme Court stated in Hurtado, that even innocent owners have— To follow up, Mr. Chandler, on Judge Young's question, I mean, is there—could you give me an example? Are you saying—let me put it this way, leaving aside this particular case here for the moment— are you saying that there could never be a seizure of evidence that would not lead to a takings claim, a viable takings claim? I think that's right. I think any seizure of property for use as evidence in a criminal proceeding would be a valid exercise of the government's police power. Assuming it's a good faith seizure. Even if it's not in good faith, it's not a takings claim. Well, if it's not in good faith, you don't have a takings claim. That's right, exactly. I mean, you may have a claim against the individual, but there would not be a takings claim. And that is made clear in Acadia as well, where the court said that the appellant or the plaintiff would have to assume at the outset that the government's actions were proper. If I could just answer—this is just by way of a housekeeping question, I guess, and no one—I was just curious. As I read Rule 41, it provides that when property is seized, you bring an action, as was brought here by Amerisource, you can bring an action to have the property returned under Rule 41. And as I read the rule, and maybe I didn't have it right, it says that that is to be brought in the district where the seizure takes place. But here I saw that the action was brought in the District of Alabama, whereas, as I understand it, the property was seized at the facility in West Virginia. Was there any reason for that? Do you understand what I'm saying? I do. And actually, I read Rule 41 the same way. That's not an issue that was considered in this case. I mean, I suppose if—when that issue would come up would be if Amerisource had received a judgment under Rule 41 from the Alabama court and later brought a taken claim on that basis or someone alleged that it was entitled to the return of its property on that basis, the government may argue in that case that the Rule 41 proceeding was brought in the wrong court. But that's not something that was raised in this case. No, I understand. But you don't have any particular knowledge as to why it came into Alabama when the rule would seem to suggest it should be in West Virginia. I do not. Going back to the point about Hurtado, as the Supreme Court recognized in Hurtado, even an innocent owner has a non-compensable obligation to provide evidence in a criminal proceeding. The second reason that Amerisource's innocent owner claim fails is that the analysis that they're suggesting really shifts the focus away from where it belongs, which is on the character of the government's action. And they would have this court look at instead the character of the appellant or the character of the property. So you do think that the test, as defined by the Supreme Court, is the character of the government's action. And if the character of that action is an exercise of the police power, then that answers the question. That's correct. And, in fact, the case law bears this out. If you look at Venice, for example, in Venice the Supreme Court implicitly held that the petitioner's status as an innocent owner didn't give rise to a taking claim. And we should be clear about what we're talking about here. In many of the forfeiture cases, the innocent owner's status was asserted as a defense. Here Amerisource is arguing that the innocent owner's status by itself gives rise to a takings claim where one wouldn't otherwise exist. This case, I guess, doesn't – it was interesting. And one – and I can't remember the name of it – the Supreme Court case, there's two – I guess I read – there were two where they raised this. There was the older Supreme Court case. I think it was that Goldsmith case where the court said we're not presented with the question of what would happen if illegal alcohol was found in a Pullman car. Would we seize the car from the railroad? And then there was also the more recent one where it talked about what would happen if someone had drugs in their cabin on a cruise ship. Would they take the Cinderella cruise ship? But I mean is that a limit there? Would that be a limit to the ability to seize? I mean say, for example – and the Supreme Court hasn't addressed it – but say, for example, someone is on a cruise ship in the Caribbean and they have narcotics in their cabin and it's seized. I don't think anyone would suggest would they not be seizing the cruise ship. I think that's right, but I think the resolution to that issue is under Rule 41. I think the owner of the cruise ship would have a pretty easy time going into the district court and saying there's no need for the seizure of the cruise ship in order to – as evidence in a criminal matter – force someone to have marijuana on board. But in order to exercise the police power, there are frequent instances where, in fact, you do contract for services. You will contract for phone lines to run taps and other information. You will contract for hotel rooms adjacent one to the other to set up because you believe that criminal activity will take place. You contract for the delivery of contraband with normal UPS delivery services because they are not suspect. The government does that all the time, and they pay for it. I don't know the truth of this, but I read that evidently you didn't pay your bills and the phone company took down various lines because they weren't paying. If you pay for those things, why? Why don't you seize them? I won't call them taking. Why don't you just say we need your phone lines to enforce the laws. We need these hotel rooms to enforce the laws. We need your truck to deliver this to enforce the laws. Why not do that? Because those things aren't evidence in a criminal proceeding. Oh, so you think that's the – I thought the police – well, the police power goes far beyond just placing evidence before a neutral fact finder. But you – all right, you'll stick to this case. You say this potentially was evidence, potentially. And your hook for that is the 41G proceedings, right, because it never was introduced in evidence. It never was on anyone's exhibit list. It never was – the only nexus I can see is that a magistrate judge familiar with these proceedings adjudicated that the government ought to keep this material. Now, do you have anything better than that? Any more nexus than that? Well, in their complaint before the Court of Federal Claims, Amerisource conceded that the property was seized as evidence in the criminal proceeding. So that has never been a question in this case. And moreover, they certainly haven't argued in any of their briefs that it was seized for some other reason. They accepted the magistrate's ruling. They didn't object. Well, there were two rulings from the magistrate. There was – Amerisource filed a first Rule 41G motion, which was denied the magistrate in her order, indicated to Amerisource that if they intended to appeal it, they had to, within a certain amount of time, provide their – state their objections to the magistrate's order. They failed to do that. And then I believe shortly before the judgment was expired, there was another Rule 41G motion, which was summarily dismissed from – by the district court. But in any event, that's correct. They did not establish that they were entitled to the return of their property through a proper Rule 41G proceeding. I think also Amerisource's contention that the property in any exercise of the government's police power must itself be noxious or must be the instrumentality of a crime doesn't stand up under this court's cases. And in particular, I'd ask the court to look at 1 Cadillac. And there is a perfect example. In 1 Cadillac, the government seized a car. A jury later determined that it wasn't subject to forfeiture because it had not been the instrumentality of a crime. There was no suggestion in that case that the car itself was noxious or it was not legal. And the court in 1 Cadillac said that there was no taking it based on the government's interest in seizing the car. Likewise, in Acadia, I think Acadia demonstrates that there is no – that one's status as an innocent owner doesn't give rise to a takings claim. In Acadia, the court made clear that there was no allegation that Acadia was involved in any criminal wrongdoing. Are there statutes? I guess we see this most frequently, I guess, Mr. Chandler, in the narcotics area, narcotics prosecutions. Are there – I mean it does seem to be pretty familiar law that if drugs are being transported in a vehicle or a motorboat, that boat or vehicle can be seized and forfeited by the government. But does it apply also if, say, two people are in a vehicle and they're part of a – they're meeting to have a discussion about future sale of narcotics, but there are no narcotics in the vehicle. Under those circumstances, could there be a seizure? I suspect it may, and each state has its own forfeiture statute, and so I think it would depend on the breadth of that particular state's forfeiture statute. Of course, there is. Is there some – isn't there some – in Title 21, is it, there's the innocent owner provision where somebody – I think the federal forfeiture statute does have an innocent owner provision or release valve. But again, it would depend on which particular forfeiture statute was applicable under the circumstances. Another good example of the principles that I've mentioned is the court of federal claims decision in CA, which was cited with approval in this court's decision in Acadia. In fact, I would say the circumstances in CA are probably the most similar to the circumstances in this case. In CA, the law enforcement authorities seized property belonging to CA which it believed might be evidence in a criminal proceeding. They held it for a number of years, never charged CA with any crime, never initiated forfeiture against the property. And so here you have an innocent owner and quote-unquote innocent property. And in CA, the court said that this was a valid exercise of the government's police power and that there was no taking. And in fact, in CA, the property was partially destroyed. It was maintained in a government warehouse. The government – the warehouse sprung a leak. It damaged – there was a great deal of water damage to some of the property. Some of it was destroyed and whole. And notwithstanding the fact that the government had only given CA back a portion of what it had seized from them, the court found that there was no taking in that case. I would point out as well that the Merisource's argument with regard to Sheldon is not correct. Merisource contends that Sheldon stands for the proposition that there is an innocent owner claim that arises. And the first reason that that's not valid is that this court specifically limited Sheldon to the circumstance of an infersonum forfeiture action in this decision in Beretta. Moreover, I think the decision in Sheldon itself is questionable after the Supreme Court's decision in Venice. And the facts of Sheldon are distinguishable from this case in that, number one, it didn't implicate the obligation to provide evidence that the Supreme Court outlined in Hurtado. And secondly, it didn't consider the police power issues that have been raised in this case. If the court doesn't have any further questions, the government would respectfully request an informed decision to the court at all times. All right. Thank you. Mr. Mayor? Thank you. With respect to the Rule 41 proceedings, they were brought in the place where the property was located, which might not seem to comply directly with the language of the rule. But that's where they were brought because that's where the property was at the time the thing was brought. The main thing I'd like to say is that for us, when you listen to the arguments in this case, if the logic of the arguments on one side lead to absurd results, you should assume they're probably wrong. And I think that the logic of the government's argument here simply leads to absurd results. And the answer that, well, the result here is not absurd, doesn't really respond to the fact that the arguments don't make sense. And I think that the structure that we propose makes a lot more sense, really, in all of the cases. And so in the hypothetical about the cruise ship, let's suppose you have a prosecution where the cruise ship is really important as evidence. And you can imagine such a prosecution. The cruise ship is really important. Imagine a prosecution in which a piece of real estate, like a hotel, it's really important as evidence. One possibility is that the judge in the Rule 41 proceeding is supposed to give the cruise ship back. Sorry, we think you can't keep the cruise ship for five years because otherwise that would be too much for that person to pay. That can't be the right answer. If you have an important prosecution and you need the cruise ship, the answer is the government has to pay for it. I mean that's clearly the right answer is that the government should do the prosecution it needs to do, and it should spend the resources where the prosecution is burdened wholly innocent parties. That's got to be a more sensible result than having federal district judges say we shouldn't have this prosecution because in our view it would be too burdensome on innocent parties. But as a practical matter, Mr. Nance, probably no one would suggest that the cruise ship was necessary evidence. I raised that with Mr. Chandler because it was just an interesting argument that had been made in a Supreme Court case recently. Maybe it was the Venice case, I'm not sure, and then in that older Goldsmith case about the Pullman car. I think it goes directly to Judge Young's point, which is the reason no one would suggest that is because unless the prosecution is really important, it would cost a lot of money to pay for it. And they would have to pay for it, just like they pay for the cost of building this courthouse. But it's typical, though, to see how the cruise ship would be necessary in a criminal prosecution. Typically, when drugs are seized in a hotel room, the narcotics are evidence, but nobody suggests that they need to put a circle around the hotel room. I don't know. I remember when I lived here, there was a prosecution of a former mayor of the district who was allegedly seen in a hotel room doing something illegal. I don't remember the details. But I can imagine that if it was important to submit that prosecution, they could have needed, in this day and age of DNA evidence, to completely destroy every single thing in the hotel room. They might need to completely tear the carpet apart. They might need to completely tear the bed apart. They might need to tear apart every single thing in the hotel room to search for and test for DNA evidence. And if they did that, they might need to pay the hotel rent. My guess is they probably didn't. But therein is precisely the point. If that's your hypothetical, they might need to do that. And if they do that in the exercise of the police power, don't the cases say that that is not a taking? I don't think that's right. I think every single one of the cases he cites, if you look at CA, that's a case where the property was taken from a suspect. Not just one Cadillac, the property was taken because it was allegedly used in a narcotics transaction. The justification for the intrusion on property in every one of those cases was an allegation that the property was used in illegal activity or that the person whose property was taken had engaged in illegal activity. There are no cases in which the justification for taking the property is simply, we believe it would be useful as evidence. And the closest – I think that's why there's a distinction with Sheldon. Sheldon is a case where the court was uncomfortable that an impersonal forfeiture for a RICO conviction, which is admittedly justification for taking all of the property. All right. Thank you very much. Case is submitted.